**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**WARREN PAVING, INC.**                                                       **PLAINTIFF**

**v.**                                                    **Civil No. 1:24-cv-009-HSO-BWR**

**O'NEAL CONSTRUCTORS, LLC,
and CALGON CARBON
CORPORATION**                                                                **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT
O'NEAL CONSTRUCTORS, LLC'S MOTION [5] TO COMPEL
ARBITRATION AND TO STAY PROCEEDINGS PENDING ARBITRATION,
AND DENYING WITHOUT PREJUDICE DEFENDANT CALGON CARBON
CORPORATION'S MOTION [9] TO DISMISS COUNTS III AND IV OF THE
COMPLAINT**</u>

BEFORE THE COURT is Defendant O'Neal Constructors, LLC's Motion [5]
to Compel Arbitration and to Stay Proceedings Pending Arbitration, which asks this
Court to compel Plaintiff Warren Paving, Inc., to arbitrate its claims against
O'Neal, and to stay Plaintiff's claims against Defendant Calgon Carbon
Corporation. Defendant Calgon Carbon Corporation has separately filed a Motion
[9] to Dismiss Plaintiff Warren Paving, Inc.'s claims against it. Having considered
the Motions [5], [9], the record, and relevant legal authority, the Court finds that
Defendant O'Neal Constructors, LLC's Motion [5] to Compel should be granted, that
Plaintiff Warren Paving, Inc. should be ordered to submit its claims against
Defendant O'Neal Constructors, LLC to arbitration, and that the remainder of this
case should be stayed and administratively closed pending the resolution of
arbitration. Defendant Calgon Carbon Corporation's Motion [9] to Dismiss should

be denied without prejudice to its right to reurge the motion upon the conclusion of the arbitration.

# I.  BACKGROUND

A.  Factual background

According to the Complaint, Defendant Calgon Carbon Corporation ("Calgon") announced it would add a new production line to its Hancock County, Mississippi, carbon products plant. State Court Record [1-1] at 5. As part of this construction project, Calgon entered into a contract ("the Prime Contract") with Defendant O'Neal Constructors, LLC ("O'Neal") as the prime contractor. *Id.* O'Neal in turn entered into a subcontract ("the Subcontract") with Plaintiff Warren Paving, Inc. ("Warren Paving" or "Plaintiff"), "under which O'Neal would pay Warren Paving to pave hot mix asphalt as required by the Prime Contract." *Id.*

The Subcontract included provisions for dispute resolution, which required that "[a]ny controversy, claim or dispute arising out of or in any way in connection with the Subcontract or the Project which the parties do not promptly adjust and informally resolve, shall be finally resolved according to the procedures specified herein below." *Id.* at 28. Relevant here are the Subcontract's mediation and arbitration provisions:

> Mediation: If the parties fail to reach agreement by direct negotiation within sixty (60) days from the commencement of the negotiation, the parties will submit the dispute to nonbinding mediation unless mutually agreed otherwise. The parties shall select a mediator. If the parties cannot agree upon a mediator, they shall conduct such mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association. The mediation shall be held in Greenville, South Carolina.

. . .

> <u>Arbitration</u>: Claims not resolved by mediation shall be decided by arbitration, which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. . . . All issues regarding whether a dispute is arbitrable pursuant to this provision shall be determined by the arbitrator. The parties acknowledge this agreement involves interstate commerce and is governed by the Federal Arbitration Act. . . .

*Id.* at 29.

As part of Calgon's Prime Contract with O'Neal, it could exercise an option to purchase materials directly from a subcontractor. *Id.* Calgon exercised this option and entered into a purchase order directly with Plaintiff for the purchase of asphalt mix. *Id.* Plaintiff alleges that it completed all on-site work required of it by the Subcontract and provided all asphalt mix purchased by Calgon. *Id.* at 6. On June 30, 2023, Plaintiff submitted its invoice to Calgon, which Calgon paid in full. *Id.* On July 10, 2023, Plaintiff submitted a pay application to O'Neal, which amounted to $429,692.26 and covered all work completed under the Subcontract through June 30, 2023. *Id.* Plaintiff asserts that it has not received any payment for this work, and that O'Neal has offered no explanation for its failure to pay. *Id.*

B.    <u>Procedural history</u>

On December 13, 2023, Plaintiff filed suit in the Circuit Court of Hancock County, Mississippi, bringing five claims. *Id.* at 3-12. Counts I and II asserted a breach of contract claim and a "payment action" against O'Neal. *Id.* at 7-8. Counts

3

III, IV, and V advanced unjust enrichment, quantum meruit, and lien enforcement claims against Calgon. *Id.* at 8-10.

Calgon, with O'Neal's consent, removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. *See* Not. [1]; Joinder [4]. O'Neal then filed the instant Motion [5] to Compel Arbitration and Stay Proceedings Pending Arbitration, *see* Mot. [5], and Calgon filed its own Motion [9] to Dismiss Counts III and IV of the Complaint, *see* Mot. [9]. Both Motions [5], [9] are fully briefed. *See* Resp. [12]; Resp. [14]; Reply [20]; Reply [21]. On May 6, 2024, Plaintiff and Calgon filed a Joint Motion [22] to Dismiss Count V of the Complaint, which the Court granted. *See* Mot. [22]; Order [25].

C.     O'Neal's Motion [5] to Compel Arbitration and Stay Proceedings

O'Neal asserts that the Subcontract contains a valid, binding arbitration agreement governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1. Mem. [6] at 3. According to O'Neal, because the arbitration agreement delegates any scope questions to the arbitrator, the Court need not consider whether Plaintiff's claims fall within the scope of the arbitration agreement. *Id.* at 4-6. O'Neal also argues that because Plaintiff's claims against both Defendants involve the same operative facts and are inherently inseparable, the arbitration of Plaintiff's claims against O'Neal will have a critical impact on the litigation of Plaintiff's claims against Calgon, and that under the FAA it is mandatory that the Court issue a stay pending arbitration. *Id.* at 7-9.

In its Response [12], Plaintiff takes the position that the arbitration agreement is unenforceable because it is permissive and optional, and requires that mediation occur as a condition precedent to any arbitration. Mem. [13] at 6-10. Plaintiff contends that even if O'Neal is entitled to arbitration and a mandatory stay of the claims against it, the Court should nevertheless deny O'Neal's request to stay Plaintiff's claims against Calgon. *Id.* at 12-14. Plaintiff argues that the Court should instead sever those claims from this case because they are sufficiently distinct such that it could prevail against one party but not the other. *Id.*

In its Reply [20], O'Neal contends that the arbitration provision is binding and enforceable, and that "the Court's inquiry is simple: does the plain language of O'Neal and Warren Paving's Subcontract reveal a 'common intent [that] arbitration is to be the final, binding method of resolution?'" *Id.* at 6 (alteration in original) (quoting *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 238 (5th Cir. 2013)). According to O'Neal, the question of whether a condition precedent to arbitration, such as mediation here, has been satisfied is delegated to the arbitrator and is not for the Court to resolve. *Id.* at 9-10.

Finally, O'Neal maintains that a stay is required as to the entire case, because "the claims against Calgon involve the same Project, the same contracts, and the same nucleus of operative facts—namely Warren Paving's performance on the Project—that will determine whether Warren Paving is ultimately entitled to monetary relief under closely related legal theories that share common elements." *Id.* at 10-13.

D.   Calgon's Motion [9] to Dismiss

Calgon states that Plaintiff's claims against it for unjust enrichment and quantum meruit fail as a matter of Mississippi law because quasi-contractual claims cannot be brought for work completed under an existing contract. Mem. [10] at 5-8. Plaintiff responds that its claims against Calgon are alternative grounds for relief, such that it may bring them alongside its contractual claims against O'Neal. Mem. [15] at 5-9. Calgon counters that under Mississippi law a subcontractor cannot bring quasi-contractual claims against a project owner. Reply [21] at 2-4 (citing *Ground Control, LLC v. Capsco Indus., Inc.*, 214 So. 3d 232, 243 (Miss. 2017); *Redd v. L & A Contracting Co.*, 151 So. 2d 205, 208 (Miss. 1963)).

## II.   DISCUSSION

A.   Relevant law

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Arbitration agreements must be enforced "according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). A

court "shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

In considering whether to compel arbitration under the FAA, courts generally follow a two-step analysis. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). First, a court decides whether the parties agreed to arbitrate the dispute at issue. *Id.* To answer this question, a court must determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quotation omitted). Second, a court determines whether legal constraints external to the agreement foreclose arbitration. *Id.*

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018); *see also Rent-A-Ctr.*, 561 U.S. at 68-69 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").[1] If a delegation clause exists, "absent a challenge to the delegation clause itself, [the Court] will consider that clause to be valid and compel arbitration," *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5thdw Cir. 2018), "leaving any challenge to the

---

[1] To the extent South Carolina law applies, *Rent-A-Center* is consistent with South Carolina law. *See Palmetto Wildlife Extractors, LLC v. Ludy*, 869 S.E.2d 859, 863-66 (S.C. Ct. App. 2022), *reh'g denied* (Feb. 25, 2022); *Masters v. KOL, Inc.*, 846 S.E.2d 893, 899 (S.C. Ct. App. 2020).

validity of the Agreement as a whole for the arbitrator[,]" *Rent-A-Ctr.*, 561 U.S. at 72. However, the Court "may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so."[2] *Arnold*, 890 F.3d at 551-52.

Finally, Section 3 of the FAA "requires the court, 'on application of one of the parties,' to stay the action if it involves an 'issue referable to arbitration under an agreement in writing.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (quoting 9 U.S.C. § 3). However, even where Section 3 does not apply, a court retains the discretion to "stay the claims between the nonarbitrating parties pending outcome of the arbitration simply as a means of controlling its docket." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993).

B.    Analysis

O'Neal seeks to enforce the delegation provision within the arbitration agreement. Mem. [6] at 4-5. When a party attempts to enforce a delegation clause, a court looks only "to see if an agreement to arbitrate was formed, then determine[s] if it contains a delegation clause." *Edwards*, 888 F.3d at 744. If an agreement was formed and a valid delegation clause exists, the analysis ends and a court is to compel arbitration. *See id.* at 743-46.

The Court applies state law to determine whether an arbitration agreement was formed. *Id.* at 745. The Subcontract contains a choice-of-law provision specifying that South Carolina law controls this inquiry. State Court Record [1-1] at

---

[2] In the Fifth Circuit, the "clear and unmistakable evidence" standard is governed by federal and not state law. *Arnold*, 890 F.3d at 552.

32. "Because the validity of that provision has not been called into question," the Court applies South Carolina law. *Edwards*, 888 F.3d at 745. Under South Carolina law, a contract is formed when there is "a meeting of the minds between the parties as to all essential and material terms" and the parties "manifest a mutual intent to be bound." *Simmons v. Benson Hyundai, LLC*, 881 S.E.2d 646, 649 (S.C. Ct. App. 2022), *reh'g denied* (Mar. 25, 2022), *cert. denied* (Mar. 30, 2023). Here, the Subcontract itself and the parties' performance under it, as well as their attempts to enforce it, show a mutual intent to be bound. *See, e.g.*, State Court Record [1-1] at 13 ("For good and valuable consideration as set forth herein, Contractor and Subcontractor legally bind themselves as follows: . . .").

Turning to essential terms, the arbitration agreement includes mutual promises to arbitrate disputes, procedures and rules for arbitration, and a delegation provision. *See id.* at 29. The only term Plaintiff claims is omitted from the arbitration agreement is a selected forum. Mem. [13] at 11. However, where an arbitration agreement states that arbitration is to be "conducted '*in accordance with*' a named forum's rules[,]" forum selection is not an essential term. *Dean v. Heritage Healthcare of Ridgeway, LLC*, 759 S.E.2d 727, 733-34 (S.C. 2014) (emphasis added). The arbitration agreement here requires that disputes "shall be decided by arbitration . . . *in accordance with* the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect." State Court Record [1-1] at 29 (emphasis added). As the parties have raised no other formation

issues, the Court finds that the Subcontract evidences a meeting of the minds as to all the essential terms of a contract. *See id.*

As for whether the arbitration agreement is valid and the dispute falls within the scope of the agreement, the parties have expressed their intent to delegate "[a]ll issues regarding whether a dispute is arbitrable pursuant to this provision" to the arbitrator.[3] *Id.* Because such a provision operates as "an additional, antecedent agreement" the party seeking arbitration is asking this Court to enforce, the only question is "whether the delegation provision is valid under § 2." *Rent-A-Ctr.*, 561 U.S. at 69. In addressing this question, the Supreme Court has held that the rule that a party seeking to challenge the validity of an arbitration agreement must specifically challenge the arbitration agreement, as opposed to the contract as a whole, likewise applies to a delegation clause. *Id.* at 70-72. Thus, a party seeking to challenge the delegation clause in the arbitration agreement must specifically challenge the delegation provision itself. *Id.*

Here, Plaintiff has not specifically challenged the delegation provision. Plaintiff argues only that the arbitration agreement does not contain "express, unconditional language providing either party with the unilateral right" to arbitrate, and that a condition precedent to arbitration, that the parties must

---

[3] The arbitration agreement also incorporates the Construction Industry Arbitration Rules of the American Arbitration Association, State Court Record [1-1] at 29, which grants the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement[,]" Constr. Indus. Arb. Rules of the Am. Arb. Ass'n. at 18. The Fifth Circuit has held that adoption "of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

attempt to mediate the claims, has not been satisfied.[4] Mem. [13] at 6-7. In fact, "[n]owhere in [Plaintiff's] opposition to [O'Neals] motion to compel arbitration did [it] even mention the delegation provision." *Rent-A-Ctr.*, 561 U.S. at 72. Therefore, because "there is an agreement to arbitrate with a delegation clause, . . . absent a challenge to the delegation clause itself, [the Court] will consider that clause to be valid and compel arbitration." *Edwards*, 888 F.3d at 744.

C.   Whether this case should be stayed

O'Neal asks that this case, including Plaintiff's claims against O'Neal and against Calgon, be stayed. Because the Court is compelling arbitration of Plaintiff's claims against O'Neal, under Section 3 of the FAA it must stay this case as to those claims. *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024).

As for Plaintiff's claims against Calgon, "it is unsettled in the Fifth Circuit whether the Federal Arbitration Act's ('FAA') mandatory stay provision under 9 U.S.C. § 3 may be invoked by a signatory against a nonsignatory." *Peak Pipe & Supply, LLC v. UMW Oilfield (L) Int'l LTD*, No. 3:18-CV-410-L, 2018 WL 6177268,

---

[4] Even if no delegation provision existed, the Supreme Court has held that the issue of whether a condition precedent to arbitration has been satisfied is for the arbitrator to decide, not the Court. *See BG Grp., PLC v. Republic of Arg.*, 572 U.S. 25, 34-35 (2014). Other courts, including some within the Fifth Circuit, have held that such a rule applies to arbitration agreements requiring mediation before arbitration. *See Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 565 (4th Cir. 2015) (holding *BG Grp.* applies when the condition precedent is mandatory mediation); *Home Care Providers of Texas v. Cross*, No. 3:19-CV-1680-N, 2020 WL 1819984, at *3 (N.D. Tex. Apr. 10, 2020) ("While the agreement includes a mediation provision, the Court finds that the issue of whether the condition precedent has been fulfilled is an issue for the arbitrator, not the Court, to decide."); *Valenzuela v. Crest-Mex Corp.*, No. 3:16-CV-1129-D, 2019 WL 3803626, at *2 (N.D. Tex. Aug. 13, 2019) ("And as the court explained in *Valenzuela I*, the question whether mediation (or, for that matter, any condition precedent) must precede arbitration is for the arbitrator."); *Valenzuela v. Crest-Mex Corp.*, No. 3:16-CV-1129-D, 2017 WL 3311203, at *3 (N.D. Tex. Aug. 3, 2017) (citing *Chorley* and holding that "the question whether mediation must precede arbitration under the 2016 Agreement is for the arbitrator").

at *2 (N.D. Tex. Nov. 27, 2018). Even if the mandatory stay is not applicable as against Calgon, the Supreme Court has held that a district court may "stay litigation among the non-arbitrating parties pending the outcome of the arbitration. . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.23; *see also Jones v. Singing River Health Sys.*, No. 1:14CV447-LG-RHW, 2016 WL 3351291, at *2 (S.D. Miss. June 15, 2016) (citing *Moses H. Cone Mem'l Hosp.* and staying litigation against non-signatories).

The Fifth Circuit has held that a claim involving a non-signatory may be subject to the discretionary stay if: "(1) the arbitrated and litigated disputes involved the same operative facts; (2) the claims asserted in the arbitration and litigation were 'inherently inseparable'; and (3) the litigation had a 'critical impact' on the arbitration." *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016).

Plaintiff advances breach of contract and payment action claims against O'Neal, and unjust enrichment and quantum meruit claims against Calgon. State Court Record [1-1] at 7-10. The claims against both Defendants turn on the same essential nucleus of operative facts, whether Plaintiff rendered services on the construction project under the Subcontract and whether it was paid for rendering those services. *See Matter of Est. of Eubanks v. Huber*, 251 So. 3d 734, 740 (Miss. 2018) (stating that the first element of a quantum meruit claim is that "valuable services were rendered or materials furnished"); *Beasley v. Sutton*, 192 So. 3d 325, 332 (Miss. Ct. App. 2015) ("An unjust enrichment action is based on the equitable

principle that a person shall not be allowed to enrich himself unjustly at the expense of another." (quotations omitted)).

Resolution of these issues in litigation could have a "critical impact" on the arbitration of Plaintiff's claims against O'Neal, such that "the arbitration proceedings would be both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration." *Harvey v. Joyce*, 199 F.3d 790, 796 (5th Cir. 2000); *see also Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir. 2004) ("Given the binding effect of a federal judgment, as well as the factual similarities in [plaintiff's] asserted claims, the ICC arbitrator would necessarily be strongly influenced to follow the court's determination.").

Regarding inseparability, the Fifth Circuit has found that a plaintiff's breach of contract claim against a signatory defendant was "inseparable" from its equitable claims against a non-signatory defendant, including an unjust enrichment claim, "because the plaintiff was merely seeking different remedies for the same violation." *Waste Mgmt.*, 372 F.3d at 345; *see also Harvey*, 199 F.3d at 795-96 (holding that plaintiff's non-identical claims against a non-signatory are "inherently inseparable" because the non-signatory's "potential liability derives from [the signatory's] conduct"). Here, Plaintiff's claims against O'Neal and Calgon seek to remedy the same alleged violation, that it was not paid for services it performed on the construction project. As such, Plaintiff's claims against O'Neal are "inherently inseparable" from those against Calgon. A discretionary stay should apply as to Plaintiff's claims against Calgon.

III. <u>CONCLUSION</u>

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant O'Neal Constructors, LLC's Motion [5] to Compel Arbitration and to Stay Proceedings Pending Arbitration is **GRANTED**, and Plaintiff Warren Paving, Inc. is **ORDERED** to submit its claims against Defendant O'Neal Constructors, LLC to arbitration.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, this case is **STAYED and ADMINISTRATIVELY CLOSED** for statistical purposes pending the outcome of the arbitration between Plaintiff Warren Paving, Inc. and Defendant O'Neal Constructors, LLC.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the parties shall move to lift the stay and reinstate this case to the active docket within 30 days after the conclusion of the arbitration.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Calgon

Carbon Corporation's Motion [9] to Dismiss Counts III and IV of the Complaint is

**DENIED, WITHOUT PREJUDICE** to its right to reurge the motion upon the

conclusion of the arbitration and the lifting of the stay.

**SO ORDERED AND ADJUDGED**, this the 5th day of August, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE